In re Carol Elizabeth CAMERON, Debtor.

No. 00–40414–BJH–13.

United States Bankruptcy Court, N.D. Texas, Fort Worth Division.

March 12, 2002.

**458**

James M. Morrison, Fort Worth, TX, for debtor.

Jack O'Boyle, Jack O'Boyle & Assoc., Dallas, TX, for Creditor Consumer Portfolio Service.

Timothy Truman, Fort Worth, TX, Chapter 13 Trustee.

**1.** The Case was reassigned to the undersigned judge on April 3, 2000. The Plan was initially

### MEMORANDUM OPINION

BARBARA J. HOUSER, Bankruptcy Judge.

Before the Court is the Debtor's Modification of Plan After Confirmation (the "Modification") filed by Carol Elizabeth Cameron (the "Debtor"). Consumer Portfolio Service ("CPS") has filed an Objection to the Modification (the "Objection") and a brief in support of the Objection. The Court [1] heard the Modification and the Objection on February 6, 2002. The Court has jurisdiction over the Modification and the parties pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding in accordance with 28 U.S.C. § 157(b)(1) and (b)(2)(B), (L). This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law with respect to the Modification. Fed. R. Bankr.P. 7052, 9014.

### I. Factual and Procedural Background

The Debtor filed her Chapter 13 case on January 28, 2000 (the "Case"). On August 14, 2001, the Debtor filed her Final Chapter 13 Plan and Motion for Valuation (the "Plan") in which she proposed to retain her 1994 Chrysler LeBaron car (the "Car") and to pay CPS, the holder of a perfected lien on the Car, $5,628.00 over 47 months at 8% interest in monthly installments of $121.70. CPS objected to confirmation, contending that the Debtor's value of the Car was not its replacement value and that the proposed interest rate was legally insufficient. In response to CPS' objection to confirmation, the Debtor modified the Plan to increase the interest rate to be paid to CPS from 8% to 15% and to extend the payment term. The Court entered an order confirming the Plan, as modified, on October 3, 2000. Pursuant to the confirmed Plan, CPS was to be paid the value

confirmed by Order of the Honorable Massie Tillman. *See* Special Order 2000–1.3.

of the Car ($5,628.00) in full with interest at 15% in monthly installments of $121.70.

CPS did not file a proof of claim in the Case. On August 3, 2000 (after the bar date had passed), the Debtor filed her Objection to Claims in which she sought the disallowance of CPS' claim in the Case. CPS did not respond to the claim objection. The Court entered an Order on Debtor's Objection to Claims on October 3, 2000 in which CPS' claim was disallowed.

The combined effect of the two Orders entered on October 3, 2000 (the Order confirming the Plan and the Order disallowing CPS' claim) was to grant CPS an allowed secured claim in the Case in the amount of $5,628.00 in accordance with § 506(a) of the Bankruptcy Code (the value of the Car) and to disallow any unsecured deficiency claim that CPS could have asserted in the Case.[2]

After experiencing some difficulty with the Car after the Plan was confirmed,[3] on or about October 4, 2001, the Debtor filed the Modification in which she proposes to change her monthly Plan payment from $216.00 (of which $121.70 is paid to CPS under the Plan) to $76.00 and to change her treatment of CPS' allowed secured claim from retain and pay to surrender. In short, the Debtor seeks to modify her confirmed Plan to surrender the Car to CPS in satisfaction of CPS' allowed secured claim.[4]

CPS objects to the Modification and contends that the Modification is legally impermissible under section 1329(a) of the Bankruptcy Code. CPS is prepared to repossess the Car and resell it provided the Debtor remains liable to pay the difference between the value realized from resale by CPS and the outstanding principal amount of CPS' allowed secured claim under the Plan with interest at 15% until that remaining claim is paid in full.[5] In essence, CPS is prepared to credit the outstanding principal amount of its claim with the net proceeds realized by a sale of the Car, but it wants the balance of its previously allowed secured claim paid. The Debtor is not prepared to accept CPS' condition to surrender. Thus, the Court must decide whether the Debtor has the legal right to modify her confirmed Plan to surrender the Car in satisfaction of any claim CPS is entitled to assert in the Case.

## II. Legal Analysis and Authority

■ The legal issue presented here has been addressed by a number of courts. Unfortunately, the courts do not agree on the correct interpretation of the Bankruptcy Code in answer to this question. Some courts allow such a modification, while others do not. *See In re Goos,* 253 B.R. 416 (Bankr.W.D.Mich.2000)(summarizing the current case law). Not to be outdone, the commentators are also in disagreement. While two bankruptcy treatises suggest

---

2. The disallowance of any unsecured deficiency claim on October 3, 2000 was of little consequence since the Plan provided no payment to unsecured creditors.

3. The Debtor testified that she was having trouble keeping the Car running and she did not want to keep paying to repair the Car. The Debtor testified that the Car "stopped working" and that she had the Car "repaired but it didn't take." She further testified that the Car has not been driven since June of 2001.

4. The Debtor contends that CPS is entitled to no further claim against the Debtor irrespective of the value that CPS actually receives from a subsequent sale of the Car following the Debtor's surrender.

5. While no evidence was offered with respect to amounts outstanding under the Plan, according to the Court's calculation, even if the Debtor was current on her Plan payments as of the date the Modification was filed, CPS was still owed in excess of $4,900.00.

that a chapter 13 plan can be modified to surrender collateral and reclassify the resulting deficiency if the other requirements for confirmation of a modified plan are satisfied, *see* Keith M. Lundin, *Chapter 13 Bankruptcy*, § 6.49, at 6–126 (1993); 8 *Collier on Bankruptcy* ¶ 1329.02, at 1329–4 (Lawrence P. King ed., 15th ed.1992), a third states that "the emerging majority trend holds that § 1329 may not be utilized by a debtor to voluntarily surrender collateral, and reclassify any deficiency after the creditor's sale of the collateral to an unsecured claim," *see* 5 William L. Norton, Jr., *Norton Bankruptcy Law and Practice*, § 124:3, at 124–39 (2d ed.1997).

Following the Sixth Circuit's decision in *Chrysler Financial Corp. v. Nolan (In re Nolan)*, 232 F.3d 528 (6th Cir.2000), this Court has recently held that a chapter 13 debtor may not modify her confirmed chapter 13 plan to surrender a car in satisfaction of an allowed secured claim. *See In re Coffman*, 271 B.R. 492 (Bankr. N.D.Tex.2002)(Jones, J.). Although in agreement with the result reached in both *Nolan* and *Coffman*, this Court will apply what it perceives is a different analysis to come to that same conclusion here—the Debtor may not modify the Plan to surrender the Car to CPS over its objection.

Section 1325 of the Bankruptcy Code gives a chapter 13 debtor three alternative ways in which to satisfy an allowed secured claim under a plan. First, the debtor may negotiate an agreement with the secured creditor who then accepts the plan. *See* 11 U.S.C. § 1325(a)(5)(A). Second, the debtor may confirm the plan over the objection of the secured creditor by providing that the creditor retains its lien and receives a stream of payments that have a present value equal to its allowed secured claim. *See* 11 U.S.C. § 1325(a)(5)(B). Finally, the debtor may surrender the collateral to the secured creditor. *See* 11 U.S.C. § 1325(a)(5)(C). In essence, section 1325 provides two payment options (*i.e.*, a negotiated agreement or cramdown) or an option to simply surrender the collateral.

In formulating a plan, a debtor has the right to select one of the payment options, *see* 11 U.S.C. § 1322(b)(6), or the surrender option, *see* 11 U.S.C. § 1322(b)(8), and thereby satisfy the secured creditor's allowed claim. Here, the Debtor chose to retain the Car and pay CPS' allowed secured claim under the Plan.

■ Once a plan is confirmed, it is binding on the debtor and each creditor. *See* 11 U.S.C. § 1327(a). Numerous courts have held that confirmation of a plan is res judicata of all issues that could or should have been litigated at the confirmation hearing. *See, e.g., In re Coffman*, 271 B.R. at 495; *In re Goos*, 253 B.R. at 419.

■ Section 1329(a) of the Bankruptcy Code creates a statutory exception to the binding effect of a confirmed chapter 13 plan because it authorizes certain postconfirmation modifications to such a plan. However, this exception is a limited one—it applies only to those modifications expressly authorized by section 1329(a). Section 1329(a) provides that a confirmed plan may be modified to:

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan, to the extent necessary to take account of any payment of such claim other than under the plan.

11 U.S.C. § 1329(a).

■ It is a settled rule of construction that "a statute must, if possible, be con-

strued in such fashion that every word has some operative effect." *United States v. Nordic Village, Inc.*, 503 U.S. 30, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992). In addition, specific words within a statute "may not be read in isolation of the remainder of that section or the entire statutory scheme." *Sutton v. United States,* 819 F.2d 1289, 1293 (5th Cir.1987). Instead, a court must "construe a statute in such a manner as would give each provision of the statute full effect." *Heitkamp v. Dyke (In re Dyke)*, 943 F.2d 1435, 1442 (5th Cir.1991).

Applying these principles here, when the applicable provisions of the Bankruptcy Code are read together and harmonized, this Court concludes that section 1329(a) does not permit the requested Modification. As noted previously, section 1325 provides a debtor with three alternative ways in which to satisfy an allowed secured claim—two "payment" options and a "surrender" option. Read literally, section 1329(a)(1) and (2) only permits post-confirmation modification of a plan if the debtor chose one of the payment options provided in section 1325(a)(5)(A) or (B). Specifically, section 1329(a)(1) permits the debtor to "increase or reduce the amount *of payments*" and section 1329(a)(2) permits the debtor to "extend or reduce the time *for such payments.*" 11 U.S.C. § 1329(a)(emphasis added). Nowhere in section 1329(a) is the debtor given the right to go back and elect a different method by which to satisfy an allowed secured claim.

Based upon this construction of the statute, the Court concludes that if a debtor chooses to satisfy an allowed secured claim through one of the two payment options provided in section 1325(a)(5)(A) or (B), that debtor has the right to modify a confirmed plan to "increase or reduce the amount of payments" and/or "to extend or reduce the time for such payments."

However, having elected payment as the method by which CPS' allowed secured claim will be satisfied here, the Debtor has no right to modify the Plan under section 1329(a) to elect a different method—surrender—as the way in which CPS' allowed secured claim will be satisfied.

### III. Conclusion

Because the Debtor has no legal right to modify the way in which she has elected to satisfy CPS' allowed secured claim in accordance with section 1329(a), the Modification must be denied. A separate Order denying the Modification will be entered.