**In re Juan and Diana HERNANDEZ.**

No. 01–50257–L2–13.

United States Bankruptcy Court,
S.D. Texas,
Laredo Division.

Aug. 9, 2002.

David Peake, Chapter 13 Trustee.

Tobin Clark, Marcel C. Notzon, III, for household.

### AMENDED MEMORANDUM OPINION IN SUPPORT OF ORDER APPROVING PLAN MODIFICATION

WESLEY W. STEEN, Bankruptcy Judge.

This memorandum opinion addresses whether a debtor may modify a confirmed chapter 13 plan to surrender a vehicle to a lender holding a perfected security inter-

est in the vehicle and thereby satisfy the lender's secured claim, paying the unsecured portion of the claim *pro rata* with other unsecured claims. For reasons set forth below, the Court concludes that there is no *per se* prohibition of plan modification to surrender collateral to a secured lender in payment of the secured claim. Based on file the specific facts of this case, the Court approves the plan modification.

## FACTS

The facts are undisputed. The Debtors own a 2000 Chevrolet S–10 pickup truck which is collateral for a loan from Household Auto Finance ("Household"). The Debtors' chapter 13 plan was confirmed on November 7, 2001. In their original plan the Debtors recognized Household's total claim of $19,232.62; the confirmed plan would pay Household $13,825 as a secured claim and the balance of Household's claim would be paid *pro rata* with other unsecured claims.

Household filed a notice of appearance and request for notices in the case about one month prior to the confirmation hearing. However, there is no other pleading filed by Household in the record prior to plan confirmation. There was no hearing or contested matter to establish the value of the collateral when the original plan was confirmed or at any other time in this case. There is no evidence that there was (or was not) any agreement of the parties with respect to the value of the collateral. So far as the Court can tell from the docket sheet and the evidence presented by the parties, the Debtors simply proposed to pay $13,825 to Household in treatment of its secured claim, and Household did not object.

Subsequent to plan confirmation, the Debtors' homestead mortgage lender filed a proof of claim exceeding what the confirmed plan provided. The Debtors pro-posed a plan modification on December 28, 2001 to increase the payments to the mortgage lender. The modification was approved on January 18, 2002, notwithstanding concerns expressed by the Court concerning feasibility, *i.e.*, the Debtors' ability to make the plan payments. To address the Court's concerns, the Debtors agreed to orders for their employers to withhold plan payments from the Debtors' wages and for the employers to pay the withheld amount directly to the chapter 13 trustee.

The Debtors have now proposed a second plan modification that would surrender their pickup truck to Household in satisfaction of Household's secured claim. Household objected to the second modification. Household asserts that, as a matter of law, a chapter 13 debtor may not surrender a vehicle in satisfaction of the secured portion of a debt if the debtor proposed to pay that secured claim in a plan confirmed earlier in the case. Household has not alleged (or offered any evidence) that the current value of the pickup truck is less than Household's secured claim that the original plan proposed to pay.

The Debtors' second motion to modify (docket # 55) states:

> Since confirmation of Debtor's [sic] plan, Debtors have fallen behind on their [homestead] mortgage payment. A motion to lift was filed by the creditor, Ocwen Mortgage. Debtor's wife had increased medical expenses due to a fall that injured her knee. Debtor's [sic] can now start making payments to Ocwen. The Creditor, Ocwen Mortgage have [sic] agreed to include their payments in the Chapter 13 plan. Additionally, Debtors are surrendering their 2000 Chevrolet S–10 to Household Auto Finance Co. which was being paid through the plan.

As noted, Household objected to this second modification of the plan. The objection (docket # 59) states:

> Pursuant to The United States Bankruptcy Code Section 1329(a)(1), Debtors may pay the claims faster or slower, but are not allowed to change the amount or status of the claim after confirmation. 11 U.S.C. § 1329(a)(1). The controlling law in this (sic) circuit is that res judicata is applicable to Motions to Modify Confirmed Plans, unless there have been unanticipated substantial changes in Debtors' financial conditions. *In re Arnold*, 869 F.2d 240, 243 (4th Circuit 1989) *(6th Circuit)* (sic).

At the hearing on the second proposed plan modification, Mrs. Hernandez testified that she suffered a knee injury prior to plan confirmation and that she continues to receive treatment and to incur medical expenses for that injury. Although not detailed, the testimony suggested that Mrs. Hernandez has missed work and lost income because of the injury.

That was the only evidence introduced at the hearing. Household offered no evidence.

The Court finds the Debtors' testimony concerning the reasons for the proposed plan modification to be credible.

## CONCLUSIONS OF LAW

There are three principal bankruptcy treatises addressing this issue: *Collier on Bankruptcy*,[1] Lundin, *Chapter 13 Bankruptcy*,[2] and *Norton on Bankruptcy*.[3] The first two conclude that a debtor may surrender a vehicle in satisfaction of a secured claim, and the third concludes that a debtor may not. Two very learned opinions out of the United States Bankruptcy Court for the Northern District of Texas appear to conclude that a debtor may not.[4] A large number of cases (well-analyzed in one of the Northern District of Texas decisions) have discussed the issue and have reached opposite conclusions.

Obviously the issue has been analyzed and discussed at length, and just as obviously this decision will not settle the matter. In general, the long discussion in Lundin's *Chapter 13 Bankruptcy*, § 264.1 is the most persuasive. This memorandum will not repeat that analysis, but adopts Judge Lundin's analysis generally with these abbreviated specific comments.

### The Parade of Horribles

Some of the cases (and the *Norton* treatise) seem to be mostly concerned that a debtor might confirm a plan, use collateral for an extended period of time, permit depreciation in excess of the principal amortization of the debt, and then surrender the collateral when it is worthless. An even more frightening prospect is that a debtor might subject the collateral to harsh use (such as never changing the oil) thereby wasting the collateral.

The decisions in these cases do not appear to be driven by analysis of the statute or (even by legislative history) but appear to be designed to prevent abuse. But if the decision is driven by the need for fairness, it would seem that the decision should be fact specific, not an absolute rule of law. It is hard to understand why it would be unfair to Household in this case or how Household would be abused for Mr.

---

1. 8 *Collier on Bankruptcy*, ¶ 1329.02 (15th ed rev. 2001) ("Collier").

2. Keith M. Lundin, *Chapter 13 Bankruptcy*, § 264.1 (3d ed. 2000) ("Lundin").

3. *Norton Bankruptcy Law and Practice*, § 124:3 (2d ed. 2001) ("Norton").

4. *See In re Coffman*, 271 B.R. 492 (Bankr. N.D.Tex.2002) and *In re Cameron*, 274 B.R. 457 (Bankr.N.D.Tex.2002).

and Mrs. Hernandez to surrender their vehicle in satisfaction of the secured claim so that they can keep their home.

▎ A conclusion that a rigid rule of law is necessary to avoid potential abuse ignores the safeguards already in the statute. To modify a chapter 13 plan, a debtor must meet the requirements generally applicable to plan confirmation, including the requirement that the plan (modification) "has been proposed in good faith."[5] If a debtor tried to modify a plan to take undue advantage of a secured creditor, the creditor could protect its interests by objecting to the modification on the grounds that the modification is not proposed in good faith.

*Reconsideration of Secured Claims*

Some of the decisions holding that a debtor may not modify a plan to surrender collateral in satisfaction of a secured claim assert that the secured claim is established by confirmation of the original plan and thereafter cannot be changed. This analysis does not adequately address Bankruptcy Code § 502(j) which provides:

A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case.

Section 506(a) of the Bankruptcy Code states that the amount of an allowed secured claim

shall be determined in light of . . . the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

While these two sections do not specifically address payment of secured claims by abandonment of collateral, they clearly contemplate (and do not prohibit as a matter of law) determination of a secured claim "in conjunction with *any* hearing on a plan affecting such creditor's interest."[6] (Emphasis supplied.)

*Res judicata*

▎ Some courts conclude that the treatment of a secured lender cannot be changed because the original confirmation of the plan is *res judicata* of all issues that were (or could have been) litigated at confirmation including the amount of secured claims. But this principle may not be as absolute in chapter 13 cases as it might seem. It is clear that the amount of Household's secured claim could have been litigated in connection with confirmation of the chapter 13 plan.[7] But without specific adverse litigation, confirmation of a chapter 13 plan does not conclusively establish the amount and secured status of a claim.

In *In re Simmons*, 765 F.2d 547 (5th Cir.1985), the Fifth Circuit held that a chapter 13 plan provision treating a claim (secured under state law) as unsecured and transferring the property to the debtor free and clear of the lien did not conclusively establish that the claim was unsecured.

In *Matter of Taylor*, 132 F.3d 256 (5th Cir.1998), the Fifth Circuit held that confirmation of a chapter 11 plan did not bar the IRS from asserting a responsible officer penalty notwithstanding the fact that the IRS participated in the case and was served with the plan which purported to eliminate the liability.

---

5. Bankruptcy Code § 1329(b) adopts the requirements of § 1325(a)(3).

6. Bankruptcy Code § 506(a).

7. *See* Bankruptcy Code § 506, applicable part quoted *supra.* *See also* Bankruptcy Code § 1325(a)(4).

Taylor's listing of the debt in his schedules, disclosure statement, and Plan along with the recitation "Pursuant to § 505" did not invoke in any way the tax determination process ... we require an objection to a proof of claim or a § 505 motion to determine the amount of a tax debt. *Taylor*, 132 F.2d[F.3d] at 262. We do not hold that a bankruptcy court must have distinct proceedings in order to determine a tax debt or that the court cannot combine a § 505 hearing and a plan confirmation hearing or address a tax debt in another manner.... Rather, we hold that the confirmation of a plan does not itself invoke the tax determination process. *Id.* at 263.

 Many of the cases cited for the *res judicata* effect of plan confirmation are chapter 11 cases. Chapter 13 is different. Chapter 13 plans do not produce a bankruptcy discharge until after all [8] (or until all *required*) [9] payments are made. By contrast, discharge in a chapter 11 case occurs on confirmation.[10] A chapter 11 plan can only be modified post-confirmation "before substantial consummation of such plan." [11] The modified plan "becomes the plan only if circumstances warrant such modification." [12] By contrast, a chapter 13 plan may be modified after the vast majority of payments have been made. There is no requirement in chapter 13 that "circumstances warrant such modification." Only the plan proponent or the reorganized debtor may propose a modification of a chapter 11 plan. But the debtor, the chapter 13 trustee, or an unsecured creditor may propose a modification of a chapter 13 plan. Clearly, a chapter 13 plan was intended to allow for adaptation to changing circumstances. The need for

a plan confirmation to have final, definitive effect in chapter 11 does not necessarily apply to chapter 13.

And there are other problems with concluding that confirmation of a chapter 13 plan is *res judicata* of the secured status of a claim.

If confirmation of a chapter 13 plan were *res judicata* of the debtor's classification of a secured lender's claim (as suggested by some of the cases), then under *Simmons* and its prodigy, that rule would apply only to the debtor, and not to the creditor. That may (or may not) be an appropriate application of judicial estoppel (depending on the circumstances) but does not seem a proper application of the doctrine of *res judicata.*

Or, suppose that the debtor simply stops making monthly payments, the case is dismissed on motion of the trustee, and the debtor files another chapter 13 case. Bankruptcy Code § 349 provides that "[u]nless the court, for cause, orders otherwise, the dismissal of a case under this title does not .... prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title." None of the cases would hold that there is an absolute rule of law that prohibits surrender of the collateral in the second case. The explicit statutory provision is that there is *no* prejudice unless the court, for *cause,* orders otherwise.

All of the cases acknowledge that § 1325 (which deals with confirmation of a plan) explicitly permits surrender of collateral in satisfaction of secured claims. The cases that do not permit surrender in a plan

---

**8.** *See* Bankruptcy Code § 1328(a).

**9.** *See* Bankruptcy Code § 1328(b).

**10.** *See* Bankruptcy Code § 1141.

**11.** Bankruptcy Code § 1127(b).

**12.** Bankruptcy Code § 1127(b).

modification rule that way because they do not see an explicit provision for surrender in § 1329 (which governs modification). Therefore they conclude that the original plan may provide for surrender but the plan modification may not. This analysis does not give due recognition to § 1329(a)(3) which allows modification to change the method of payment and to § 1329(b) which incorporates § 1325(a)(5)(c) (which treats surrender as equivalent to payment).

The decisions that find this statutory deficiency also create two anomalies: First, the result of these decisions is that plan modification cannot do what plan confirmation can do. That result is contrary to the design of § 1329, which explicitly incorporates by reference the plan design rules and the requirements applicable ·to plan confirmation. Second, despite those cases, the debtor could achieve the desired result by allowing the case to be dismissed and then filing another bankruptcy case. *Collier* makes this point:

> Because chapter 13 is completely voluntary, the debtor may propose any modified plan that satisfies the requirements of chapter 13. *Res judicata* does not bar such modifications by the debtor; the debtor usually could achieve the same result by dismissing the case and filing a new chapter 13 case. *Collier*, ¶ 1329.02, at 1329–4.

If there were a dismissal followed by a second case, the only limit on the proposed surrender would be the debtor's "good faith." A debtor who allowed the case to be dismissed and then filed a second case to surrender the car and to save the home might be found to be in good faith. Since the statutory provision applicable to modification of a chapter 13 plan (§ 1329(b)) incorporates by reference all relevant provisions relating to initial confirmation of a chapter 13 plan, it would seem appropriate to interpret the two provisions to reach the same result, rather than reading § 1329 very narrowly to create different results. In short, the same words should achieve the same result regardless of whether they are applied to plan confirmation or to plan modification.

*Application of the Bankruptcy Code to this Case as Interpreted by this Court*

 Bankruptcy Code § 1329(a)(3) provides that a chapter 13 debtor may modify the chapter 13 plan to

> alter the amount of the distribution to a creditor ... to the extent necessary to take account of any payment of such claim other than under the plan.

Bankruptcy Code § 1329(b)(1) incorporates (for plan modification) statutory provisions applicable to plan confirmation. Section 1322(b)(2) (applicable to plan modifications by virtue of § 1329(b)) provides that the plan modification may modify the rights of secured creditors. Section 1322(b)(10) (applicable to plan modifications by virtue of § 1329(b)) provides that the modification may "include any other appropriate provision not inconsistent with this title." From this, it should be clear (i) that there is explicit authority to modify the rights of a secured creditor by plan modification, and (ii) that modification may contain any provision not expressly prohibited. So far, surrender of collateral qualifies.

Section 1329(b)(1) also incorporates and makes applicable to plan modifications the statutory requirements for plan confirmation. Since the same words govern plan confirmation and (by explicit incorporation by reference) plan modification, they should produce the same result when they are initially written and when they are expressly incorporated by reference. For confirmation of the plan (and by incorporation by reference for modification of the plan) the debtors' must satisfy six require-

ments. Only two of those are at issue here.[13]

Section 1325(a)(5)(C) permits the debtor to surrender collateral to the creditor as one method of satisfying the requirements for plan confirmation. By virtue of § 1329(b), this provision is also applicable to modifications. Since surrender is sufficient for confirmation, it must be sufficient for modification.

Surrender of collateral to a secured creditor is the indubitable equivalent of payment of the secured claim.[14] In this case, the plan is being modified to surrender the collateral. *That* form of payment was not provided for in the original plan, and therefore is a payment "other than under the plan." [15] Therefore, the Court finds that the requirements of § 1325(a)(5)(C) are satisfied.

Section 1325(a)(3) requires that the Court make a finding with respect to good faith. The Court concludes that the Debtors' motive for proposing the plan modification was to surrender the automobile in order to reduce their plan payments to allow them to keep their home. There is no indication that the Debtors abused, or intended to abuse, Household. The Court concludes that the plan modification was proposed in good faith.

The Court concludes that the six requirements of § 1325(a) are met. Therefore, the requirements for modification are met: Bankruptcy Code § 1329(b)(1).

*Supplementary Findings and Conclusions*

For reasons set forth above, the Court does not believe that there is a rule of law that a debtor cannot propose a modification of a chapter 13 plan to surrender collateral to a secured creditor in payment of the secured claim. Nor does the Court believe (in light of *Simmons* and its progeny and because of the significantly different effect of confirmation of chapter 11 and chapter 13 plans) that confirmation of a chapter 13 plan is *res judicata* of the allocation of a creditor's claim (under § 506) into secured and unsecured portions. However, if the application of Bankruptcy Code § 502(j) is found to be necessary, the Court makes the following additional findings and conclusions.

The bifurcation of a claim into secured and unsecured portions applies only to the extent that the claim is allowed. Or, to say the same thing another way, to be an *allowed secured* claim under § 506, the claim must first be allowed. Therefore, all secured claims are allowed claims and only allowed claims are allowed secured claims. Section 502(j) allows reconsideration of allowed claims. Therefore, the Court believes that § 502(j) applies to both the secured and unsecured elements of a claim.

Section 502(j) allows reconsideration of the claim "according to the equities of the case." Reconsideration of a claim to allow surrender of collateral in satisfaction of a claim might not be equitable if reconsideration of the claim were intended to abuse

---

**13.** Based on the Court's review of the plan, all pleadings filed in the case, the Trustee's report and recommendation (including a liquidation analysis of the original plan and any changes made by the modification), and the testimony of Mrs. Hernandez at the hearing on plan modification, the Court concludes that all of the other four requirements are satisfied.

**14.** *See Matter of Sandy Ridge Development Corp.*, 881 F.2d 1346 (5th Cir.1989).

**15.** "Except in the (rare) case when the original plan requires surrender of collateral, surrender or repossession after confirmation constitutes satisfaction of the secured claim 'other than under the plan.' *Lundin*, § 264.1, at 264–2." *See also* Bankruptcy Code § 1329(a)(3), and the discussion *supra.*

or to injure the creditor, or even if the unintended consequences of reconsideration were unfair. In the case currently under consideration, there has been no showing (nor even an allegation) of improper motive or unfairness. In addition, if the standards of Rule 60(b) of the Federal Rules of Civil Procedure are guidelines for reconsideration of the claim,[16] then the Court concludes that surrender of a pickup truck resulting from medical expenses and lost income in order to make payments sufficient to keep a family home, when there is no alleged or proven difference between the value of the vehicle and the remaining amount of the secured claim or other harm to the creditor, constitutes circumstances under which it is "no longer equitable that the judgment should have prospective application" and "justif[ies] relief from the operation of the judgment."[17] Therefore, were it necessary to reconsider the claim and to reclassify the secured portion of the claim, the Court would do so and would reclassify Household's secured claim to be the value of the Chevrolet S–10 pickup truck surrendered.

*Final Note*

Even if the Court were to sustain Household's objection, Household will not be paid any more on its secured claim. The Hernandezes just don't have enough income. If the entire amount due Household as a secured claim under the original plan must be paid, then the plan is not feasible and the case must be converted or dismissed because the plan cannot pay all secured creditors.[18] In either case, Household will be paid no more. Therefore, in this case, to hold that the Debtors cannot surrender the pickup truck in satisfaction of Household's secured claim is to hold that Mr. and Mrs. Hernandez cannot keep their house because they cannot pay for their car. This Court does not see that rule in the statute.

## CONCLUSION

Based on these findings and conclusions, and by separate order issued this date, the plan modification is approved.

**16.** As the *Coffman* case suggests.

**17.** Fed.R.Civ.P. 60(b).

**18.** Bankruptcy Code § 1325(a)(5).